[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves the dissolution of a marriage between the parties, who were married on January 12, 1968, had four children now all past the age of majority, and now seek to dissolve their marriage.[1] The only issue in dispute is the division of the marital estate.[2]
Testimony at the trial from Ms. Martin (and not contested by Mr. Martin) established that for many years the parties jointly ran a business that renovated summer homes and later designed and CT Page 15038 built "salt box" houses. Mr. Martin provided the skill and expertise to carry out the services sold to business customers, while Ms. Martin ran the office, drew up the plans that Mr. Martin designed, and did the books. Mr. Martin admitted on direct examination conducted by his attorney that the parties functioned as partners in the business, each contributing fifty per cent to its success and operation. As the business became more successful, they hired sub-contractors and eventually employees. From difficult early years the business eventually became quite successful in the mid-1980s, with as many as 16 employees and earnings in 1986 of $234,000 and in other years in excess of one hundred thousand dollars. At first the couple ran the business as a sole proprietorship in Mr. Martin's name, but they eventually incorporated the business.
During the years in which the business was a sole proprietorship, all income was reported to the Internal Revenue Service as earned by Mr. Martin; after incorporation, the couple adopted a different method of allocating and reporting income. At first after incorporation, Ms. Martin testified that they would take the year's profits as a year-end bonus and assign most of the bonus on an alternating year basis to one party and then the other; later as the business became more profitable, they began assigning wages that way also. In effect, one party would get IRS credit for most of the income that year, except for enough to allow the other to make the maximum allowed individual contribution to a personal IRS account. In 1990 and 1991, for example, Mr. Martin reported social security earnings of $29,176 and $31,200 respectively, while Ms. Martin reported $2,970 and $2,860 those two years. In the next three years, 1992 through 1994, she reported social security earnings of $55,500, $57,600, and $60,600 respectively while he reported $2,000, $7,000 and $8400. They adopted this alternating method so that Ms. Martin could build up some earnings in her social security account and develop an IRA for herself. While Ms. Martin testified at trial that they alternated income each year, the evidence establishes that they did so only from 1990 to 1995, and then not rotating annually; the first two years Mr. Martin reported the bulk of the income, and the next three years she did.
Ms. Martin claims that the business being a sole proprietorship for many years now has significant financial implications on the financial resources of the two parties. She makes this claim in two ways — in the higher social security earnings that Mr. Martin reported and will entitle him to higher CT Page 15039 social security retirement and/or disability payments, and in more funds set aside in his Individual Retirement Accounts than hers.
As to the difference in social security earnings and resulting entitlements, because for many years all income was reported to Mr. Martin, he reported a total of $417,505 in social security income from 1969 to 1995 (the last year for which social security records for Mr. Martin are in evidence); and paid social security taxes of $32,712 during that time. Ms. Martin, on the other hand, reported social security earnings of $156,356 and paid social security taxes of $13,385 from 1969 through 1994. As a result, Mr. Martin has a substantially larger estimated social security benefit at age 66 of $955 per month and a current monthly disability amount of $1,005, as opposed to a retirement estimate age 66 for Ms. Martin of $710 and a present monthly disability amount of $590.
As to differences in the couple's IRA accounts, Ms. Martin testified, and Mr. Martin did not dispute, that during one of the high income years as a sole proprietorship, the couple put $30,000 into a SEP IRA that by law could only be placed in his name because he was the sole proprietor of the business. Except for the SEP IRA, she testified that the couple contributed equally to their individual IRA accounts.
Thus the remaining issue is how to divide various portions of the marital. The plaintiff has requested that the court award her the two time-share condominiums owned by the couple in Florida and the Barbados, and one-half of the $40,000 amount that she claims is or ought to be in Mr. Martin's Individual Retirement Accounts resulting from the marriage.[3] Mr. Martin testified that he had that amount in his IRAs upon returning from Italy.
Each party testified at trial that they had completely depleted the IRA accounts in their own names. Ms. Martin said that she had spent her IRA to purchase the condominium home she now lives in. Mr. Martin said he had spent his two IRAs in two ways — to meet his own living expenses since the separation and to pay some of Ms. Martin's household and living expenses since the separation.
Mr. Martin testified that he used the money from his IRA accounts for living expenses in the last two years because he has been too depressed to work. He testified that he suffers from CT Page 15040 "utterly debilitating depression" that saps his energy and has worked only intermittently since the separation. He also testified that he cannot work more than he does, that he has tried to but been unsuccessful. He described himself as virtually destitute, with his vehicle repossessed, owing more than $100,000 in credit card bills, having recently filed for bankruptcy, and been just awarded food stamps by the Commonwealth of Massachusetts. Although he has filed for personal bankruptcy, he claims that he intends to honor debts owed to his parents (which he did not list on the bankruptcy petition because, he claims, he was not required to list all his debts) and the loans for the tuition and living expenses and travel to Italy that the Feldenkrais School in Italy had advanced him so that he could continue and complete his training in that discipline.
While Mr. Martin's affect and demeanor on the witness stand were consistent with someone who is depressed (i.e., he spoke slowly and unenergetically), there are also many people without any mental disabilities who present themselves in a similar manner. He offered no independent evidence, either by way of expert testimony[4] or from lay witnesses, that he currently has a mental disability or that any depression prevents him from working. His own testimony on this point, standing by itself, was not credible or persuasive, particularly in view of his interest in the outcome and his obvious lack of candor toward the bankruptcy tribunal and other creditors by failing to list all his debts and disclaiming any intention to discharge debts owed to his parents or the Feldenkrais school in Italy.
The court finds the plaintiff wife's requests for relief to be entirely reasonable, even generous, particularly in view of the following:
• The business partnership this couple jointly ran for so many years will result in Mr. Martin receiving $2,000 more in social security retirement income per year.
• Since Mr. Martin will receive more social security retirement and/or disability benefits than Ms. Martin, the court finds it fair and equitable to divide his IRA accounts equally between the two parties and leave Ms. Martin's IRA account for her alone.
• Mr. Martin's decision to abandon the marriage and their business left Ms. Martin in severe financial straits. In CT Page 15041 view of the fact that his decision to leave her and the business partially resulted in the foreclosure on the marital home because of lack of business income[5], it was entirely reasonable for her to spend to spend her own Individual Retirement Account on a condominium to live in.
• The court has no independent evidence as to which party's testimony to believe with regard to how much credit towards the equal division to give Mr. Martin for payments he has already made to her.[6] In light of the evidence on this point recounted in the margin, the court finds persuasive Ms. Martin's testimony that $8,000 should be credited as already having been paid. From IRA accounts that were worth at least $40,000 at the time of the separation, the credit of $8,000 towards Ms. Martin's half would leave her owed a balance of $12,000.
• Mr. Martin testified that he is not presently able to work and that he has already depleted his two IRA accounts. The court does not find sufficient evidence to credit the first statement. His having been awarded food stamps does suggest, however, that the Commonwealth of Massachusetts has found him currently to have little income and few assets.
Accordingly, the court awards Ms. Martin a fixed property distribution of $12,000, payable on or before January 31, 2000. If Mr. Martin is not able to pay that amount in full, or chooses not to do so, the court orders regular payments each month at the rate of $100 per month to be received by Ms. Martin on or before the tenth of each month beginning February 2000, with interest of 12 per cent per annum on all sums not yet paid on each payment due date until the $12,000 and accrued interest is paid in full.
As to the two time-share properties, the court believes it fair and equitable to divide them between the parties, under the following conditions:
• Ms. Martin testified that she made the only payments for expenses on the condominiums after the parties separated. The court orders her to prepare (1) an accounting of expenses she has incurred on the time shares since the separation; (2) a second list of expenses incurred on the time-shares before that date that were paid since August 1, 1998 or remain unpaid today; and (3) an itemization of payments she has made CT Page 15042 on them since August 1, 1998, and to submit all three accountings to the court and Mr. Martin no later than December 31, 1999. The court finds that these expenses were and are the mutual obligations of each party. Since Ms. Martin has made the only payments for expenses since the separation, the court orders Mr. Martin to pay Ms. Martin the following:
 — half of all expenses incurred (regardless of whether she has actually paid for such expenses yet) on the time-shares since August 1, 1998, plus
 — half of any expenses incurred prior to August 1, 1998, that were paid after that date or have not yet been paid.
 — The court orders Mr. Martin to make both these payments within thirty days of receiving the accounting of expenses and expenditures on these properties from Ms. Martin.
• Such payment shall be made by Mr. Martin and received by Ms. Martin no later than one month after Ms. Martin has submitted the list of expenses and expenditures made. If Mr. Martin fails to make these payments within thirty days as ordered above as reasonable payment for expenses incurred and reimbursement for payments made, the court orders that Mr. Martin will have forfeited his right to either of the timeshares and both such properties shall henceforth become the sole and exclusive property of Ms. Martin.
• If and when Mr. Martin makes the payments towards timeshare expenses and reimbursements, the court hopes the parties will come to an agreement as to which party will receive title to which property. If Mr. Martin makes those payments in timely manner, the parties are ordered to submit an order to the court within sixty days of the date that Mr. Martin makes the payments to Ms. Martin as to whether they have agreed to the division of the timeshares, and if so how; and if not, seeking further court order as to allocation of the properties, and the court retains jurisdiction of this case for that purpose.
As neither party has requested alimony, provision of medical benefits, life insurance coverage, the court makes no such awards. The court has considered the statutory factors from general statutes 46b-82 and finds no basis for the award of CT Page 15043 counsel fees to either party. Fees are not necessary to carry out the court's orders.
SO ORDERED.
BY THE COURT
Stephen F. Frazzini, Judge of the Superior Court